IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LADONNA SARIA,

    Plaintiff,

v.            CIVIL ACTION NO. 2:04-0382

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are the parties' cross motions for summary judgment and the defendant's motion to exceed page limitations [Dockets 28, 37, and 38]. For the foregoing reasons, the defendant's motion to exceed page limitations is **GRANTED** [Docket 38], the defendant's motion for summary judgment is **DENIED** [Docket 37], and the plaintiff's motion for summary judgment as to Count I of the plaintiff's complaint is **GRANTED** as to liability [Docket 28]. The court **FINDS** that a genuine issue of material fact remains as to the damages to be awarded to the plaintiff pursuant to Count I of her complaint and therefore, reserves this issue for trial.

**I. Background**

On May 18, 2001, the plaintiff, LaDonna Saria, was involved in a two-vehicle accident in a Wal-Mart parking lot. Ms. Saria sought immediate medical treatment at Charleston Area Medical Center and followed up with exams from her regular physician. Sometime between September 13, 2001 and October 26, 2001, following various visits to her doctor, Ms. Saria applied for total disability benefits pursuant to a policy she had purchased from the defendant, Massachusetts Mutual

Life Insurance Company (Mass Mutual). In the portion entitled "Making a Claim" the policy instructs insureds on the proper filing of a claim, and requires that an insured must first give "notice of claim." This notice must be given to Mass Mutual within 20 days after the period of disability begins, or as soon afterwards as it is reasonably possible to do so. Such notice must be in writing and must identify the insured. Neither party has questioned the timeliness of Ms. Saria's notice of claim.

Following receipt of the notice of claim, the policy informs insureds that Mass Mutual will promptly provide them with claim forms, which the insured must fill out and return to provide proof of claim. Upon receipt of Ms. Saria's application, Mass Mutual informed her that, assuming she provided sufficient proof of disability, her benefits would commence on November 14, 2001. Included in the proof of claim forms that Ms. Saria was required to complete was an "Attending Physician Statement" which included a portion to be filled out by the insured and a portion to be completed by the insured's physician. As of December 19, 2001, Ms. Saria had not submitted a completed Attending Physician Statement to Mass Mutual. Although Ms. Saria had submitted an Attending Physician Statement, the portion filled out by her regular doctor, Dr. Perrine, simply stated that a "Functional Capacity Test needs obtained to determine [Ms. Saria's disability]. I am not able to make this assessment." Ordinarily, for benefits to begin, the Physician Statement must certify the insured's disability within the meaning of the policy. Mass Mutual, however, waived this requirement when it approved Ms. Saria's claim and began paying her benefits on December 19, 2001. In the letter accompanying her first benefit check, Mass Mutual informed Saria that "[y]ou will be pleased to know that we have approved LaDonna's claim for disability benefits." The letter goes on to note that, "We have accepted May 31, 2001 as the commencement date of disability. The

90-day waiting period on your policy expired September 27, 2001 and benefits began accruing on a per diam basis on September 28, 2001 . . . . Enclosed is our payment of $3,300.00 for the period from September 28, 2001 through December 27, 2001." The letter also states that "this benefit payment was made as a service to you as we have not received the completed Attending Physician's Statement of Disability to this date . . . . In order to give further consideration to her claim, we have enclosed a Disability Progress Report with Attending Physician's Statement to be completed by you and your physician."

Mass Mutual did not pay any further benefit payments until May 2003, when they made one more sporadic payment. According to Mass Mutual, they withheld payments because Ms. Saria did not complete the Attending Physician Statement in a satisfactory manner and because she failed to undergo an Independent Medical Exam (IME). Ms. Saria, however, argues that she submitted a completed Attending Physician Statement on February 28, 2002, and the first time she was notified of the form's alleged deficiencies was in the context of the defendant's motion for summary judgment. Instead, Ms. Saria argues that Mass Mutual refused to make further payments until she would agree to undergo an IME. Ms. Saria notified Mass Mutual that she did not feel that it could require her to undergo an IME as a precondition to payment and informed the defendant that she would not undergo an IME unless Mass Mutual became current on its obligation to pay her all the benefits she felt she was due under the policy.

The Mass Mutual policy indicates that, "When proof of claim has been received at our Home Office, we will. . . pay all monthly income benefits then due; pay future monthly income benefits as they become due; and when our liability ends, immediately pay any balance due at that time." The policy then further notes that, "We have the right, at any time, to require proof that the Insured

continues to be disabled . . . .We also have a right, at reasonable intervals, to have the Insured examined by a Legally Qualified Physician chosen by us . . . . Benefits will end if this proof of continued Disability is not given to us, or if the Insured fails to have an examination, or if the Insured fails to obtain treatment that is reasonably appropriate."

**II.   Analysis**

*I.   Breach of Contract*

The heart of the dispute between Ms. Saria and Mass Mutual revolves around each parties' interpretation of these policy terms. Ms. Saria argues that Mass Mutual could not request an Independent Medical Exam (IME) before first beginning benefit payments pursuant to the policy. Ms. Saria argues that the policy clearly states that "when proof of claim has been received at our Home Office, we will:. . . pay all monthly income benefits then due." Ms. Saria persuasively argues that the portion of the policy describing Mass Mututal's right to an IME indicates that such an exam is not a prerequisite to claim approval and payment, but a right that is triggered after such payments have begun, in order to allow Mass Mutual to ascertain an insured's "continued disability." In making this argument, Ms. Saria pays particular attention to the phrase "benefits will end," a phrase which, in conjunction with the mention of continued disability leads to the reasonable conclusion that such benefits have already commenced. Thus, Ms. Saria argues that Mass Mutual was required to pay her the benefits owed pursuant to the policy when she submitted both her notice of claim and proof of claim forms and that Mass Mututal breached the contract by additionally requiring Ms. Saria to submit to an IME as a prerequisite to payment.

In contrast, Mass Mutual argues that the policy pays benefits only to those who are "totally disabled" within the meaning of the policy and that it has a right to conduct a reasonable

investigation into the validity of Ms. Saria's claim prior to the disbursement of benefits. Mass Mutual cites *Rivera Fernandez v. Connecticut Mut. Life Ins.* Co., 917 F. Supp. 120, 122 (D. P.I. 1996), a case involving different policy language, for the proposition that insurance companies can require such medical exams as a prerequisite to benefit payments. In the *Rivera* case, the insurance policy did not refer to "continued disability," but instead, simply stated that "At reasonable intervals We may require the Insured to be examined by Doctors we choose. . . If the Insured fails to submit to such an examination, We will stop paying benefits." Taken alone, the court determined that the "stop paying benefits" language was not enough to prove that the insurance company could not require the plaintiff to submit to an IME prior to the commencement of benefits. In the present case, there is similar contractual language. The present policy, however, also makes several references to "continued disability" and clearly sets out the prerequisites to payment, which do no include an IME.

This court's analysis is guided by several axioms of insurance law. First, "where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Keffer v. Prudential Ins. Co.*, 172 S.E.2d 714 (1970). On the other hand, "it is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance ompany and in favor of the insured." *Nat'l Mut. Ins. Co. V. McMahon & Sons*, 356 S.E.2d 488 (1987). An insurance policy is considered to be ambiguous if it "can reasonably be understood in two different ways or if it is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." *Id.* When determining if a contract is ambiguous, "the contract should be read as a whole with all policy provisions given effect." 2 COUCH ON INSURANCE 2d §

15:29 (rev. ed. 1984). "If the policy as a whole is unambiguous, then the insured [or insurer] will not be allowed to create ambiguity out of sections taken out of context." *Solviva, M.D. v. Shand, Morhan, & Co., Inc.*, 345 S.E.2d 33 (W. Va. 1986).

Neither party has argued that the present contract is in any way ambiguous. Although Mass Mutual asks this court to read into the contract rights and duties which do not appear on its face, it does not argue that any particular term is ambiguous or susceptible of more than one meaning. Ms. Saria argues that the prerequisites to payment of benefits are clearly laid out and that this court should give such requirements their plain meaning. This court agrees. The insurance policy that serves as the contract between these two parties clearly sets out the requirements for stating and proving a claim prior to payment. An insured must first give notice of claim within the prescribed time period. Then, Mass Mutual will send certain forms to the insured within 15 days. If those forms are not sent, the insured may send in comparable proof which includes the information referenced in the policy. These forms constitute the required proof of claim. The policy clearly states that "When proof of claim has been received at our Home Office, we will: Pay all monthly income benefits then due; Pay future monthly income benefits as they become due; and When our liability ends, immediately pay any balance due at that time."

Thus, once an insured has provided proof of claim, Mass Mutual is bound by the terms of the contract to begin paying benefits. The policy clearly indicates that "proof of claim" means the claim forms referenced–not any proof that Mass Mutual may decide is appropriate in each individual case. The policy states, "We have forms that are to be used to make a claim under this policy . . . . If we fail to send these forms within 15 days after receiving notice of claim, then the person claiming benefits may give us *other* written proof of claim." This "other written proof of claim"

language indicates that the claim forms constitute the ordinary proof of claim, but if the insured does not receive these particular forms within 15 days, they may provide the necessary information as "other written proof of claim." The policy does not include a requirement that the insured undergo an IME as a prerequisite to claim approval and payment. Instead, in a separate section, the policy provides that Mass Mutual has the right "at any time, to require proof that the Insured *continues to be disabled.*" (Emphasis Added). This proof includes Mass Mutual's right, "at reasonable intervals, to have the Insured examined by a Legally Qualified Physician chosen by us. This examination may include any X-rays, blood tests, and other procedures that are reasonable and necessary to determine *whether the Insured continues to be disabled* . . . Benefits will end if this proof of *continued Disability* is not given to us, or if the Insured fails to have an examination. . . ." (Emphasis Added). Clearly, this contract language is susceptible of only one meaning–after the insured has satisfied the notice of claim and proof of claim requirements and Mass Mutual has approved the insured's disability claim and begun to pay benefits, Mass Mutual may require the insured to undergo an IME or provide other proof to demonstrate continued disability. It is not a reasonable interpretation to read the "continued disability" language as a prerequisite to payment of claims.

Thus, Mass Mutual would ordinarily be required to pay Ms. Saria's benefits as soon as she provided them with notice of claim and completed the written proof of claim. Mass Mutual, however, waived the requirement that Ms. Saria complete the Attending Physician Statement form as a precondition to payment when it approved and began paying her benefits on December 19, 2001. The approval letter does, however, condition the *continued* payment of her benefits on the completion of such a form. Pursuant to the terms of the contract, Mass Mutual was entitled to demand proof that Ms. Saria continued to be disabled at any time after her payments had begun.

Mass Mutual, however, did not adhere to the requirements of the contract when it demanded that Ms. Saria provide this proof of continued disability *before* receiving any further benefits. The contract says that "benefits will end if this proof of continued disability is not given to us, or if the Insured fails to have an examination . . . ." This provision, however, does not give Mass Mutual the power to suspend payments until such affirmative steps are taken. Instead, the plain meaning requires Mass Mutual to pay benefits *until* the Insured fails to provide the required proof ("benefits will end if this proof of continued Disability is not given to us...").

Thus, although Mass Mutual may owe Ms. Saria some benefits, there appears to be a remaining question of fact for the jury as to if she is owed any benefits and if so, exactly how much she is owed. These benefits must be calculated by looking at the date of her last payment (December 19, 2001, which included payments through December 27, 2001) and then determining when she failed to provide the proof that was properly requested of her. The benefits she is owed are simply those that would have been paid within this time period. Mass Mutual had every right under the contract to stop paying benefits once she failed to comply with its request, but did not have the power to stop her payments until this failure.

The parties have heavily disputed the facts surrounding the determination of when Ms. Saria failed to comply with Mass Mutual's requests. First, there remains a genuine issue of material fact regarding when Mass Mutual first properly asked Ms. Saria to submit to an IME. There is also a genuine issue of fact regarding the exact time frame when the plaintiff improperly refused to submit to an IME. As noted above, Ms. Saria was not required to submit to an IME until such time as Mass Mutual approved her claim. Thus, any requests prior to December 19, 2001 are irrelevant to this determination. Additionally, there remains a factual question for the jury regarding when and if Ms.

Saria ever satisfied Mass Mutual's request for written proof of continued disability (in the form of an Attending Physician Statement). If Ms. Saria did not satisfy this request, there remains a question of fact as to when she actually failed to provide this information. These dates are important to the determination of damages, as Ms. Saria is only entitled to the benefits she would have received up and until the time she failed to satisfy Mass Mutual's legitimate requests for proof of continued disability.

Accordingly, the court **DENIES** the defendant's motion for summary judgment on this count, **GRANTS** the plaintiff's motion for summary judgment on this count as to liability, **RESERVES** the issue of damages for trial and **FINDS** that a genuine issue of material fact remains as to the determination of such damages.

### 2. Unfair Trade Practices Act and Common Law Bad Faith

Ms. Saria has also brought a claim against Mass Mutual alleging violations of the Unfair Trade Practices Act. In order to succeed on this claim, Ms. Saria must first demonstrate that her claim was timely filed within the one-year statute of limitations. In *Klettner v. State Farm Mut. Auto. Ins. Co.*, 519 S.E.2d 870 (W. Va. 1999), the West Virginia Supreme Court of Appeals held that the statute of limitations for a first-party claim under the UTPA was "governed by the one year statute of limitations set forth in West Virginia Code § 55-2-12(c) (1994)." Courts considering the statute of limitations have concluded that because a UTPA cause of action sounds in tort, it accrues when the plaintiff knew or should have known of the existence of her cause of action. The *Klettner* Court concluded that the statute of limitations for a claim under the UTPA begins to run when "the appeal period has expired on the underlying cause of action upon which the statutory claim is predicated." *Id.* at 876. Thus, in cases where the UTPA claim is predicated on a denial of coverage,

plaintiffs have one year from the denial of coverage in which to timely file their complaint. *See Johnson v. Acceptance Insurance Co.*, 292 F. Supp. 2d 857 (N.D. W. Va. 2003) (concluding that in first-party UTPA claim based on denial of coverage under insurance policy, plaintiff had one year from date of claim denial within which to bring UTPA claim).

Mass Mutual argues that Ms. Saria's statute of limitations began to run in February of 2002, when Mass Mutual argues that it discontinued her benefits. In contrast, Ms. Saria argues that her statute of limitations began to run in July 24, 2003, when Mass Mutual wrote her a letter denying her claim for benefits. Because of these disputed facts and the genuine issues of material fact discussed above, the court **DENIES** the defendant's summary judgment on this claim. The court also **FINDS** that a genuine issue of material fact remains as to whether or not Mass Mutual committed violations of the UTPA; and if it did commit such violations, whether it did so with sufficient frequency to constitute a general business practice, as required by the Act.

3.   **Bad Faith Claim**

Ms. Saria has also brought a common law bad faith claim against Mass Mutual, alleging that Mass Mutual intentionally delayed and denied payment of her claim for disability benefit payments and that such conduct constituted a breach of the duty of good faith and fair dealing owed to the plaintiff as the first party insured of the defendant. Mass Mutual argues that no genuine issue of material fact remains regarding this claim because Ms. Saria failed to cooperate in Mass Mutual's investigation and because her interpretation of the independent medical examination provisions of her policy are factually and legally incorrect. Given the court's findings above, Mass Mutual has clearly failed to carry its burden of demonstrating that no genuine issue of material fact remains as

to these claims. Accordingly, Mass Mutual's motion for summary judgment is **DENIED** as to this claim.

III. **Conclusion**

For the reasons stated above, the defendant's motion to exceed page limitations is **GRANTED** [Docket 38], the defendant's motion for summary judgment is **DENIED** [Docket 37], and the plaintiff's motion for summary judgment as to Count I of the plaintiff's complaint is **GRANTED** as to liability [Docket 28]. The court **FINDS** that a genuine issue of material fact remains as to the damages to be awarded to the plaintiff pursuant to Count I of her complaint and therefore, reserves this issue for trial. The court **DIRECTS** the Clerk to send a copy of this Written Opinion and Order to counsel of record and any unrepresented party.

ENTER: April 21, 2005

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE